**UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT**

| | | |
|---|---|---|
| KIMBERLY WELLS<br><br>Apellant,<br><br>v.<br><br>RETINOVITREOUS ASSOCIATES, LTD.<br>d/b/a MID ATLANTIC RETINA<br><br>Appellee. | : | CIVIL ACTION<br><br>No.: 16-2962 |

**APPELLANT'S BRIEF**

Appellant submits this Brief in support of her Appeal of the District Court's grant of Summary Judgment in favor of Appellee.

Respectfully Submitted,

**KARPF, KARPF & CERUTTI, P.C.**

*/s Christine E. Burke*
Christine E. Burke, Esq.
3331 Street Road
Two Greenwood Sq., Suite 128
Bensalem, PA 19020
215.639.0801
PA Bar Nos.: 308166
Attorneys for Appellant

Date: October 18, 2016

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ ii

STATEMENT OF JURISDICTION ............................................................ 1

STATEMENT OF ISSUES PRESENTED FOR REVIEW…………………..2

STATEMENT OF RELATED CASES AND PROCEEDINGS……………..2

STATEMENT OF THE CASE……………………………………...……..2

STATEMENT OF MATERIAL AND DISPUTED FACTS…………………4

STANDARD AND SCOPE OF REVIEW……………………………………10

SUMMARY OF ARGUMENT………………………………………....……11

LEGAL ARGUMENT………………………………………………...…… 12

CONCLUSION…………………………………...……………………... 28

CERTIFICATIONS……………………………………...…………….... 29

**Cases**

*Abdul-Latif v. County of Lancaster*, 990 F. Supp. 2d 517, 530, 2014 U.S. Dist. LEXIS 1313, *24-25, 121 Fair Empl. Prac. Cas. (BNA) 533, 2014 WL 47773 (E.D. Pa. 2014) .......... 18

*Alers v. City of Philadelphia*, 919 F.Supp.2d 528, 554 (E.D. Pa. 2013) .......... 14

*Alred v. Eli Lilly and Co.*, 771 F. Supp.2d 356, 365-66 (D. Del. 2011) .......... 19

*Brennan v. Norton*, 350 F.3d 399, 422, n.17 (3d Cir. 2003) .......... 14

*Brown v. Children's Hosp. of Phila.*, 2013 WL 359731 at *4 (E.D. Pa. 2013) .......... 20

*Burlington Indus. Inc. v. Ellerth*, 524 U.S. 742, 749 (1998) .......... 16

*Burlington Northern & Santa Fe Railway. Co. v. White.* 548 U.S. 53, 68 .......... 13

*Davis v. City of Newark*, 285 Fed. Appx. 899, 904 (3d Cir. 2008) .......... 13

*Dean v. Kraft Foods N. Am., Inc.*, 2005 WL 1793532, at *11 (E.D. Pa. 2005) .......... 18

*Doe v. C.A.R.S. Protection Plus, Inc.*, 527 F.3d 358, 370 (3d Cir. 2008) .......... 26

*Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279 (3d. Cir. 2000) .......... 12

*Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280-86 (3d Cir. 2000) .......... 26

*Fisher v. Pharmacia & Upjohn*, 225 F.3d 915 (8th Cir. 2000) .......... 27

*Goodall-Gaillard v. New Jersey Dep't of Corr.*, (D.N.J. 2014) .......... 18

*Jones v. School Dist. of Phila.*, 198 F.3d 403, 411 (3d Cir. 1999) .......... 12

*Kachmar v. Sungard Data Systems, Inc.*, 109 F.3d 173, 177 (3d Cir. 1997) .......... 19

*Marrero v. Camden County Bd. of Social Services*, 164 F.Supp.2d 455, 467 (D.N.J. 2001) ........ 15

*Mason v. Transportation Solutions*, 2010 WL 2698308 at (W.D. Pa. 2010) ........ 19

*Moore v. City of Philadelphia*, 461 F.3d 331, 341 (3d Cir. 2006) ........ 13

*Morgan v. City of Jasper,* 959 F.2d 1542, 1547 (11th Cir.1992) ........ 19

*Newsome v. Admin. Office of the Courts of the State of N.J.*, 51 Fed. Appx. 76, 79 (3d Cir. 2002) ........ 16

*Riley v. Delaware River and Bay Authority*, 661 F.Supp.2d 456, 471 (D. Del. 2009) ........ 14

*Robinson v. SEPTA*, 982 F.2d 892, 895-96 (3d Cir. 1993)). ........ 19

*Ross v. Campbell Soup Co.*, 237 F.3d 701 (6th Cir. 2001) ........ 27

Sempier v. Johnson & Higgins, 45 F.3d 724, 728 (3d Cir.1995) ........ 18

*Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 183 (3d Cir. 2003) ........ 24

*Shelton v. Univ. of Med. & Dentistry of N.J.,* 223 F.3d 220, 224 (3d Cir.2000) ........ 10

Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) ........ 18

*Texas Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248, 256 (1981) ........ 26

*Thomas v. Town of Hammonton*, 351 F.3d 108, 114 (3d Cir. 2003) ........ 24

*Trujillo-Cummings v. Public Serv. Co.,* 173 F.3d 864 (10th Cir. 1999) ........ 19

*Vanstory-Frazier v. CHHS Hosp. Co.*, LLC, 827 F. Supp. 2d 461, 474 (E.D. Pa. 2011)........ 26

*Villard v. Whitemarsh Continuing Care Ret. Cmty.*, 2012 WL 6562767 (E.D. Pa. 2012)........ 20

*Williams v. Mercy Health Sys.*, 866 F. Supp. 2d 490 (E.D. Pa. 2012)........ 27

*Williams v. Phila. Housing Auth. Police Dept.*, 380 F.3d 751, 760 (3d Cir. 2004) 24

*Young v. J.B. Hunt Transport, Inc.*, 2013 WL 526814 at *4........ 19

**Statutes**

28 U.S.C.A. §1331........ 1

29 U.S.C. § 2601 *et seq.*........ 2

29 U.S.C. § 2615........ 12

42 U.S.C. § 12101 *et seq*........ 2

42 U.S.C. § 12203........ 12

43 P.S. § 951 *et seq.*........ 2

43 P.S. § 955(d)........ 12

**UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT**

| | | |
|---|---|---|
| KIMBERLY WELLS | : | CIVIL ACTION |
| | : | |
| Apellant, | : | No.: 16-2962 |
| | : | |
| v. | : | |
| | : | |
| RETINOVITREOUS ASSOCIATES, LTD. d/b/a MID ATLANTIC RETINA | : | |
| | : | |
| Appellee. | : | |

## STATEMENT OF JURISDICTION

Appellant hereby avers as follows:

A.) The District Court for the Eastern District of Pennsylvania has subject-matter jurisdiction over this matter because Plaintiff's the claims arise under federal law. 28 U.S.C.A. §1331;

B.) The Third Circuit Court of Appeals has jurisdiction over this matter pursuant to Federal Rule of Appellate Procedure 3;

C.) Appellant's Notice of Appeal was timely filed on June 24, 2016;

D.) Appellant hereby asserts that her appeal is from a final Order of the District Court that disposed of all Parties' claims.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

A.) Whether the District Court applied an improper standard with respect to whether a pattern of discipline following protected activity rises to the level of materially adverse employment action.

Suggested Answer: Yes

B.) Whether the District Court improperly concluded that Appellant could not establish sufficient evidence of causation, an element of her *prima facie* case, in order to proceed with her claims for retaliation under the FMLA, ADA and PHRA?

Suggested Answer: Yes

Pursuant to LAR 28.01, Appellant asserts that these issues were properly preserved by the timely filing of a Notice of Appeal and that no further preservation of issue(s) was necessary beyond the District Court's adverse decision provided herein.

## STATEMENT OF RELATED CASES AND PROCEEDINGS

There are no currently pending related cases in any court.

## STATEMENT OF THE CASE

Appellant, Kimberly Wells (*hereinafter* "Appellant"), proceeds with claims against her former employer, Retinovitreous Associates, LTD. d/b/a Mid Atlantic Retina (*hereinafter* "Appellee" or "MAR") for unlawful retaliation under the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.* and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 *et seq*. JA 27-33.

On April 27, 2016, Appellee filed a Motion for Summary Judgment as to all claims; on May 11, 2016, Appellant filed her brief in opposition to Appellee's Motion for Summary Judgment. JA 11-17. On June 21, 2016, the Honorable Juan R. Sánchez, U.S.D.J., issued an Order and Opinion granting Appellee's Motion in its entirety. JA 3-10. The instant appeal ensued.

The District Court held that the materially adverse action *herein* at issue includes only Appellant's suspension and termination from employment, not the series of disciplinary actions that began shortly after Appellant engaged in protected activity. With that backdrop, the District Court held that Appellant could not make out a *prima facie* case of retaliation because she could not establish a causal connection between her protected activity and subsequent adverse employment actions.

The Third Circuit has held that an action or series of actions is considered materially adverse when, taken as a whole, the actions would dissuade a reasonable employee in the employee's position from engaging in protected activity. Further, this Court has held a pattern of antagonism (including a series of disciplinary actions) following protected activity is sufficient to establish the causation element of a *prima facie* retaliation claim.

The instant record establishes that Appellant was subjected materially adverse action (*i.e.* a pattern of discipline beginning shortly after she engaged in protected

activity commencing shortly after protected activity). In addition, Appellant has set forth sufficient evidence upon which a reasonable factfinder can find a causal relationship between her protected activity and the materially adverse employment action. Moreover, the record contains sufficient evidence to support a finding of pretext.

In light of the forgoing, this case should be remanded for trial.

## STATEMENT OF MATERIAL AND DISPUTED FACTS

### A. Appellant's Employment Background with Defendant

On August 8, 2011, MAR hired Appellant as an Ophthalmic Technician ("Op Tech"). JA 29, at ¶¶ 11-12. MAR is a retina practice with offices in Pennsylvania, New Jersey and Delaware, and has a practice office at Wills Eye Hospital in Philadelphia (the location at which Apellant was employed). JA 28, at ¶ 7. Appellant's primary duties included greeting and escorting patients, reviewing and documenting patient symptoms, assisting other staff as requested by office manager or physician, performing various types of ocular tests, and other duties and projects as assigned by office manager, physicians, and leadership team. JA 252-258.

At all relevant times *herein*, Appellant was directly supervised by Clinical Manager, Kristen Winkelspecht ("Ms. Winkelspect"), whose job duties included overseeing the entire clinical floor. JA 174-175, at 7:4-5, 7:18-8:4. At all relevant times, Appellant was indirectly supervised by Edward Weber ("Mr. Weber"), who

was MAR's Director of Operations and oversaw the entire Wills Eye Location (the physical location wherein Appellant worked). JA 142-143, at 6:13-7:1. At all relevant times, Michelle Miles (née Bednar) was employed by MAR as the Human Resources Director. JA 216, at 6:2-7.

### 1. Appellant's Performance and Discipline History Pre-Dating Her Filing of a Federal Lawsuit ("The Prior Lawsuit") Against Appellee for Violations of the FMLA, ADA and PHRA.

Between her date of hire and the filing of her federal lawsuit in February 2015, Appellant was disciplined by MAR on only two occasions, namely a verbal warning dated March 6, 2012 and another verbal warning almost a year later, dated January 4, 2013. JA 62, at 117:21-24; JA 263; JA, 276. 10. Then for a period ***of over two (2) years*** preceding her protected activity, Appellant <u>did not</u> receive any admonishment or written discipline whatsoever. JA 188-189, at 24:23-25:3; JA 229-230, at 30:12-31:21. Defendant's Employee Handbook contains the following relevant provision: "If your work performance is unsatisfactory or unacceptable, your supervisor will make reasonable efforts to discuss and document your deficient performance with you in an effort to help you improve." JA 251.

On July 30, 2013, Appellant received a formal performance evaluation, and *therein*, received a total score of 2.2., indicating that she was ***<u>meeting</u> employer expectations***. JA 264-267. On August 7, 2014, Appellant received another formal

performance evaluation. JA 268-273. Within the August 7, 2014 evaluation, Appellant's overall ratings from management and two separate physicians were 1.9, 2.0 and 2.0, again indicating that she was substantially meeting employer expectations. *Id. Therein*, Appellant was rated as "Meets Expectations" in numerous categories, including but not limited to: "Familiar with and implements MAR Core Values; Consistently follows policies and procedures as outlined in the MAR handbook; Knowledge of documentation requirements as well as Meaningful Use and PQRS requirements; Correctly set up procedure as per physician preference; and Communicates to physician potential complications." *Id.*

Although Ms. Winkelspecht contends, based solely on her own self-serving testimony, that she verbally counseled Appellant during the two year period pre-dating the filing of her federal lawsuit, none of these purported occurrences were memorialized in writing in a manner consistent with the verbal warnings issued in 2012 and 2013. They also should be of no import for an analysis herein, as accepting Appellant's case in the light most favorable to her, no such discipline took place. Likewise, none of these purported verbal disciplines were documented in accordance with Defendant's Employee Handbook. JA 188-189, at 24:23-25:3; JA 229-230, at 30:12-31:21.

### B. Appellant Files A Prior Lawsuit in February of 2015 Alleging Appellee's Violation of the FMLA, ADA and PHRA (while she was still employed with Appellee).

In February, 2015, Appellant filed a federal lawsuit against MAR, asserting claims under the FMLA, ADA, and PHRA. JA 18-26. Therein, she alleged that she was diagnosed with Multiple Sclerosis ("MS"), and had requested both FMLA leave and accommodations in the workplace as a result of same (including the ability to work in a different position). *Id.* Therefore, she pursued claims for failure to accommodate, hostile work environment and retaliatory treatment related to her requests for these accommodations. *Id.*

Ms. Winkelspecht, Mr. Weber, and Ms. Miles all learned of the federal lawsuit at or about the time it was filed. JA 186-187, at 22:20-23:9; JA 148, at 15:12-15.

### C. Appellee Began Subjecting Appellant to a Series of Disciplinary Actions Very Shortly After the Filing of the Prior Lawsuit.

Appellant was basically given a barrage of discipline for which she disagreed with following her filing of a federal lawsuit despite having no disciplinary history for years with Appellee. As a result of a purported infraction on February 25, 2015 (twenty days after filing suit), on or about March 2, 2015, MAR presented Appellant with a Verbal Written Warning for removing a billable medication dose from the refrigerator without signing the drug out, and purportedly failing to adhere to policies and procedures in this regard. JA 274-275. Appellant signed the document acknowledging receipt of same; however, she noted her disagreement and explanation for what occurred. *Id.* In addition, Appellant explained that the incident

giving rise to the March 2, 2015 discipline was the result of a misunderstanding between herself and another Op Tech, Christine Lallo. Specifically, Appellant explained that she asked Ms. Lallo for assistance in locating a specialty drug because Ms. Lallo was "in charge of specialty drugs." Appellant further explained that she did not speak with her Clinical Manager, Kristen Winkelspecht, with regards to locating the specialty drug because MAR does not require that Op Techs speak with their Clinical Manager in the event that a specific mediation cannot be located. JA 83-84, at 150:13-151:15. JA 295-296.

As a result of purported "Failure to meet reasonable standard expectations of work performance" on March 3, 2015, MAR presented Appellant with a Written Warning on March 20, 2015, for discharging a patient as per a doctor's orders, but without first speaking with her Clinical Manager. JA 280-281. Upon receipt of the March 3, 2015 Written Warning, Appellant expressed her objection to same, noting that "per management there is no written policy to tell manager." JA 281.

As part of her job duties, Appellant was required to follow the directions of a physician. JA 252-258. MAR did not have any written rule or policy that required an Op Techs to speak with their manager before discharging a patient pursuant to a Physician's orders. JA 94, at 161:1-4; JA 183, at 19:19-23. Prior to engaging in protected activity, Appellant had discharged patients several times without first speaking with her manager, and had not been disciplined for same. JA 101, at 171:9-

24. Accordingly, even though Appellant signed the March 20, 2015 Written Warning to acknowledge receipt of same, the "Employee Comments" section of the Warning includes her handwritten objection to same, stating as follows: "Per Management, there is no written policy to tell a manager." JA 281.

As a result of an incident on April 7, 2015, MAR presented Appellant with a three (3) day Suspension on April 20, 2015 for preparing a tap and inject procedure in the wrong eye of patient. JA 287. The procedure note upon which Appellant was relying (and which was not prepared by Appellant) was also marked for the wrong eye. *Id.*

As a result of a purported policy infraction on April 28, 2015, MAR presented Appellant with a Written Warning on May 1, 2015, for failure to check an insurance grid before signing out a medication for an eye injection, a fee slip issue. JA, 292; JA 211-212, at 61:13-62:3. As a result of a purported policy infraction on July 1, 2015, MAR presented Appellant with Termination Document on July 10, 2015, arising out of an occurrence related to a fee slip issue. JA 297. The March 20, 2015 Written Warning also indicates that Appellant was being disciplined for fee slip issues. JA 280-281.

The fee slip issues for which Appellant received discipline following her protected activity were the same type of issues that did not result in written discipline in the two (2) year period preceding same. JA 189, at 25:14-24; JA 211-212, at

61:13-62:3. Appellee's explanation for the absence of any written discipline for approximately two years is simply that Appellant' supervisor wanted to avoid the perception of a "mean manager." JA 189, at 25:14-24. In other words, the evidence in this case reflected clearly that: (1) Appellant was given multiple serious disciplinary documents and a suspension right after filing a federal lawsuit despite a multi-year good work history (without same); and (2) Appellant was being disciplined for issues that she testified she handled in the same way for years without prior discipline.

### E. Each and Every Disciplinary Action Following the Filing of the Prior Lawsuit Contributed to Appellee's Decision to Terminate Appellant' Employment.

Ms. Winkelspecht, Mr. Weber, and Ms. Miles participated in the decision to terminate Appellant. JA 175, at 8:8-9:8; JA 178-179, at 11:10-12:13; JA 145, at 8:3-23; JA 218-219, at 7:1-8:24. The decision to terminate Appellant' employment was based entirely on the discipline that was issued following the filing of her federal law lawsuit. JA 297.

## STANDARD AND SCOPE OF REVIEW

This Court conducts a plenary review of a District Court's decision granting summary judgment and the Court may examine the entire record on appeal. *See Shelton v. Univ. of Med. & Dentistry of N.J.*, 223 F.3d 220, 224 (3d Cir.2000).

## SUMMARY OF ARGUMENT

The District Court's reasoning is flawed at the initial level because the District Court applied the incorrect standard with respect to what constitutes materially adverse employment action in a retaliation claim. In short, the District Court held that a series of disciplinary actions beginning very shortly after Appellant engaged in protected activity did not constitute materially adverse action because it did not alter the terms and conditions of her employment. This standard, however, has been expressly rejected by the Supreme Court in lieu of a more objective standard that asks whether the action at issue would dissuade a reasonable person in Appellant' positon from pursuing protected activity.

In addition, the District Court improperly concluded that Appellant could not establish causation, an element of a *prima facie* case of retaliation. The instant record contains an abundance of evidence upon which a reasonable fact finder can base a finding that there is a causal link between Appellant' protected activity and the adverse action herein at issue. As discussed in greater detail *herein*, Appellant respectfully submits that, when viewed in the light most favorable to her, the record establishes causation by way of 1) a pattern of antagonism, 2) temporal proximity between her protected activity and the commencement of the pattern of antagonism, and 3) pretext

## LEGAL ARGUMENT

Retaliating against an employee for exercising his or her rights under the ADA, FMLA or PHRA is expressly prohibited. *See* 42 U.S.C. § 12203; 29 U.S.C. § 2615; 43 P.S. § 955(d). To establish a *prima facie* case of retaliation, a plaintiff must demonstrate that: (1) she engaged in protected activity; (2) she experienced an adverse employment action following the protected activity; and (3) a causal link existed between the protected activity and the adverse employment action. *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279 (3d. Cir. 2000)(citations omitted). Whether a plaintiff has established a *prima facie* case will often "depend on the facts of the particular case . . . Thus, a *prima facie* case cannot be established on a one-size-fits-all basis." *Jones v. School Dist. of Phila.*, 198 F.3d 403, 411 (3d Cir. 1999).

For purposes of summary judgment, the parties did not dispute that Appellant engaged in protected activity when she filed the prior lawsuit against Appellee. Further, the parties did not dispute that Appellant was subject to adverse action. In granting Appellee's Motion for Summary Judgement, the District Court improperly rejected Appellants' contention that the materially adverse action *herein* includes the series of written discipline that began shortly after her protected activity. Thus, the District Court applied an improper standard with respect to what constitutes a materially adverse employment action. Further, the District Court granted Appellee's Motion for Summary Judgment based on its finding that Appellant could

not establish a *prima facie* case of retaliation with respect to causation. Moreover, the District Court held that even if Appellant could establish a *prima facie* case of retaliation, she failed to give the Court reason find that she could establish that Appellee's legitimate nondiscriminatory reason for the adverse action was pretext. Appellant respectfully submits that a review of the entirety of the record in the light most favorable to her, there is ample support for a *prima facie* case of retaliation. Accordingly, the District Court's Opinion and Order must be reversed and this matter remanded for trial.

**A. The District Court Improperly Concluded that Only Appellant's Suspension and Termination, And Not the Pattern of Discipline, Constitute Materially Adverse Action as to Her Retaliation Claims.**

Anti-retaliation provisions are intended to prevent employer interference with unfettered access . . . to remedial mechanisms . . . by prohibiting employer actions that are likely to deter victims of discrimination from complaining." *Burlington Northern & Santa Fe Railway. Co. v. White.* 548 U.S. 53, 68 (internal citations omitted). With respect to retaliation claims, an "adverse action is one that well might have dissuaded a reasonable worker from making or supporting a charge of discrimination. *Davis v. City of Newark*, 285 Fed. Appx. 899, 904 (3d Cir. 2008) (citing *Burlington Northern* 548 U.S. at 68). *See also Moore v. City of Philadelphia*, 461 F.3d 331, 341 (3d Cir. 2006). The Third Circuit has expressly recognized that reliance upon the "pre-*Burlington* standard" with respect to adverse employment

action constitutes reversible error. *See Davis*, 285 Fed. Appx. at 904 (finding that the District Court improperly determined that an adverse action is only that which "alter[s] the employee's compensation, terms, conditions or privileges of employment, deprive him or her of employment opportunities, or adversely affect his or her status as an employee.").

Determining whether an alleged retaliatory act amounts to a materially adverse action must be analyzed objectively; that is, from the "perspective of a reasonable person in the plaintiff's position." 548 U.S. at 69-70. Thus, whether any act or series of acts amounts to actionable retaliation "will often depend upon the particular circumstances. Context matters." *Burlington Northern*, 548 U.S. at 69. Moreover, a determination of whether there was a materially adverse employment action requires an analysis of the employer's actions in the aggregate. *See Brennan v. Norton*, 350 F.3d 399, 422, n.17 (3d Cir. 2003) (stating that "[t]he cumulative impact of retaliatory acts may become actionable even though the actions would be *de minimis* if considered in isolation."); *Alers v. City of Philadelphia*, 919 F.Supp.2d 528, 554 (E.D. Pa. 2013) ("Acts that individually fall below the minimum threshold may still be actionable in the aggregate provided the plaintiff can show a campaign of harassment that is sufficiently substantial in its cumulative effect."); *Riley v. Delaware River and Bay Authority*, 661 F.Supp.2d 456, 471 (D. Del. 2009) ("[W]hen viewed together, otherwise immaterial acts can cumulatively allege a

materially adverse action.") *See also Marrero v. Camden County Bd. of Social Services*, 164 F.Supp.2d 455, 467 (D.N.J. 2001) (Holding that within the context a First Amendment retaliation claim, "it is a question of fact whether a campaign of harassment reaches the threshold of actionability under § 1983.").

In *Riley*, the Court noted that standing alone, various actions did not suffice to support a claim for retaliation. However, relying on the *Burlington* standard, the Court found that taken as a whole, the actions at issue (none of which included a formal reprimand), amounted to material adverse action. In so doing, the Court noted that "a reasonable employee might well have assumed such actions would continue indefinitely until he abandoned his claim, and been dissuaded from pursuing it further as a result." *Riley*, 661 F.Supp.2d at 471. In other words, the Court held that minor acts, taken in their entirety and when considered in light of all surrounding circumstances may rise to the level of materially adverse employment action. *Id.*

In the instant matter, the District Court committed reversible error by refusing to acknowledge that Appellant was subjected to materially adverse action beyond her three-day suspension and termination. In so doing, the District Court improperly relied on a pre-*Burlington* standard in determining the extent of the material adverse action *herein* at issue. Specifically, the District Court stated that "[a]n adverse employment action is a significant change in employment status, such as hiring, firing, failing to promote, reassignment, or a decision causing a significant change

in benefits." JA 7.[1] The rationale set forth by the District Court is that which was expressly rejected by the Supreme Court and the Third Circuit. *See Burlington*, 548 U.S. at 63; *Davis*, 285 Fed. Appx. at 904.

Applying the proper standard to the matter *sub judice* makes it clear that Appellant suffered from adverse employment action to a much greater degree than that which was acknowledged by the District Court. In short, Appellant was subjected to a pattern of disciplinary actions commencing shortly her protected activity.

Appellant filed the prior lawsuit on February 2, 2015. JA 18-26. The pattern of materially adverse employment action began on March 2, 2015 and continued until her termination on July 1, 2015. JA 274-275; 280-281, 287, 292, 297. Each of the primary decision-makers with respect to Appellant discipline, suspension and termination acquired knowledge of the prior lawsuit at or around the time it was filed. JA 186-187, at 22:20-23-9; JA 148, at 12-15. Moreover, the record reveals that

---

[1] In support of this proposition, the District Court cited to *Newsome v. Admin. Office of the Courts of the State of N.J.*, 51 Fed. Appx. 76, 79 (3d Cir. 2002) and *Burlington Indus. Inc. v. Ellerth*, 524 U.S. 742, 749 (1998). Neither of these cases is controlling. First, these cases analyze adverse employment action in the context of whether an employer has a viable affirmative defense to hostile work environment claims where the wrongdoer is the plaintiff's immediate supervisor. Moreover, as discussed, *supra*, determining whether a plaintiff suffered from a materially adverse employment action in a retaliation claim necessitates reliance upon *Burlington Northern* and its progeny.

each and every disciplinary action issued after Appellant' protected activity contributed to Appellee's decision to terminate her employment. JA 297.

While the District Court may have been correct that the various written disciplinary actions, standing alone, did not significantly change Appellant's employment status, this Court's jurisprudence undoubtedly supports the proposition that a series of disciplinary actions may amount to a materially adverse action for purposes of establishing a retaliation claim at the summary judgment stage. The dispositive issue that must be addressed is as follows: would a reasonable person in Appellant' position be dissuaded from pursuing the prior lawsuit in light of the pattern of discipline that commenced very shortly after same was filed? The District Court failed to address this issue.

The simple answer to the issue posed above is "yes." Any reasonable person in Appellant' position – that is, one with a two-year period of no formal written discipline who is issued a barrage of disciplinary actions beginning almost immediately after she engages in protected activity - may certainly be dissuaded from pursuing said protected activity. Simply put, the District Court applied an improper standard with respect to the materially adverse employment actions at issue. Applying the proper standard the instant matter undoubtedly establishes that Appellant was subjected to materially adverse action that commenced shortly after she engaged in protected activity. Accordingly, the District Court's Order and

Opinion granting Appellee's Motion for Summary Judgment must be reversed and this matter remanded for trial.

### B. The District Court Improperly Concluded that Appellant Could Not Establish Causation as to Her Retaliation Claims.

The *prima facie* element of causation (for which summary judgment was granted) is supposed to be an "easily" made out element per Third Circuit and Supreme Court jurisprudence. *See Goodall-Gaillard v. New Jersey Dep't of Corr.*, (D.N.J. 2014)(the *prima facie* case is not intended to be onerous, citing, *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)); *see also Dean v. Kraft Foods N. Am., Inc.*, 2005 WL 1793532, at *11 (E.D. Pa. 2005)(explaining case seemed really weak but would just assume a *prima facie* retaliation case was established since it is intended to be easy to establish, citing, *Sempier v. Johnson & Higgins,* 45 F.3d 724, 728 (3d Cir.1995).

In the absence of direct evidence, a plaintiff can establish causation by showing (1) temporal proximity between the protected activity and adverse action; (2) a pattern of antagonism after the protected act; or (3) the reason for her alleged adverse action is pretextual. *Abdul-Latif v. County of Lancaster*, 990 F. Supp. 2d 517, 530, (E.D. Pa. 2014); *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 280 (3d Cir. 2000); *Kachmar v. Sungard Data Systems, Inc.,* 109 F.3d 173, 177 (3d Cir.

1997) ("These are not the exclusive ways to show causation, as the proffered evidence, looked at as a whole, may suffice to raise the inference."); *See Trujillo-Cummings v. Public Serv. Co.,* 173 F.3d 864 (10th Cir. 1999); *See also Morgan v. City of Jasper,* 959 F.2d 1542, 1547 (11th Cir.1992).

In the instant matter, Appellant can establish causation based on each of the aforementioned factors.

**(1) Appellant Can Establish Causation Through a Pattern of Antagonism.**

This Circuit recognizes that a pattern of antagonism may be established upon a showing of "[r]epeated discipline for trivial matters and unusually close supervision." *Young v. J.B. Hunt Transport, Inc.*, 2013 WL 526814 at *4 (citing *Robinson v. SEPTA*, 982 F.2d 892, 895-96 (3d Cir. 1993)). *See also Alred v. Eli Lilly and Co.*, 771 F. Supp.2d 356, 365-66 (D. Del. 2011) (denying summary judgement as to retaliation claims, in part because of antagonism including poor evaluations based on the subjective observations and micromanagement of the plaintiff's work product); *Mason v. Transportation Solutions*, 2010 WL 2698308 at (W.D. Pa. 2010) (denying summary judgment on retaliation claims and finding a "history of antagonism" such as discipline for conduct premised upon disputed facts).

In *Robinson*, almost two years passed between the plaintiff's initial protected activity and his termination. This Court found "substantial support for the trial

judge's conclusion that Robinson's termination had its roots" in the temporally remote protected activity, in large part due to the "pattern of harass[ment]" that included "disciplining him for minor matters" that ensued thereafter. *Robinson*, 982 F.2d at 895. Thus, the Court found it reasonable to "find that the initial series of events . . . caused Robinson's and [his employer's] relationship to deteriorate, and set a pattern of behavior that [employer] followed in retaliating Robinson's later efforts" at engaging in protected activity. *Id.* In short, the *Robinson* Court concluded that "[b]ecause the[] events do not stand alone in this case, we cannot say the trial court's finding of a causal link is clearly erroneous." *Id.* at 896.

Positive performance and protected activity followed by "heightened criticism" may suffice to defeat a motion for summary judgment. *See e.g. Brown v. Children's Hosp. of Phila.*, 2013 WL 359731 at *4 (E.D. Pa. 2013). *See also Villard v. Whitemarsh Continuing Care Ret. Cmty.*, 2012 WL 6562767 (E.D. Pa. 2012) (denying summary judgment relying on evidence that employer did not follow progressive discipline and citing to positive evaluations received by the plaintiff prior to termination).

In *Brown*, prior to engaging in protected activity (*i.e.* FMLA leave and a Complaint of Discrimination filed the Philadelphia Commission on Human Relations), the plaintiff's performance evaluation indicated that she "fully" met standards in eight out of nine categories. *Brown*, 2013 WL 359731 at *1. The Court

determined that the plaintiff could establish causation, in part because "after more than a year without any formal notice of problems with [plaintiff's] performance [defendant] began to criticize her work shortly after [the] protected activity." *Id.* at *4. Moreover, the Court noted that even though the defendant argued that there were issues with plaintiff's performance prior to the protected activity, "[that] contention was undercut . . . by the positive evaluation [d]efendants had given plaintiff . . . ."

Here, the record is replete with evidence of a pattern of antagonism from which a reasonable fact finder could conclude that Appellant can establish causation. First, following her protected activity, Appellant was repeatedly disciplined for trivial matters. The trivial nature of the conduct for which Appellant was disciplined is evidenced by the fact that prior to the protected activity, Appellee was more than willing to excuse her conduct. JA 211-212, at 61:13-62:3. Specifically, the record reflects that before the filing of the prior lawsuit, fee slip issues did not trigger any formal written discipline *Id.* However, Appellee changed its approach shortly after the prior lawsuit was filed and began issuing Appellant discipline for conduct related to fee slip issues. *Id.*

Moreover, the trivial nature of the discipline is reflected by the fact that on two (2) occasions, Appellant was issued written discipline for conduct that did not even constitute a violation of any of Appellee's written rules or procedures. JA 274-275; 280-281. For example, on March 2, 2015, Appellant was issued a Verbal

Written Warning arising out of a simple misunderstanding and for failing to speak with her manager in an attempt to locate a specialty drug. JA 274-275. However, her conduct in this regard did not constitute a rule violation and therefore, should not have triggered any disciplinary action. JA 83-84, at 150:13-151:15; JA 184, at 20:3-7; JA 295-296.

Likewise, Appellant was issued a Written Warning on March 20, 2015 for discharging a patient without first speaking with her manager. JA 280-281. However, Appellant' job required that she adhere to duties as prescribed by physicians. JA 252-258. At the time Appellant received the March 20, 2015 Written Warning, she expressed her objection to same based on the fact that the conduct for which she was being disciplined did not constitute a violation of Appellee's rules. JA 280-281. Moreover, as Appellee does not have any formal rule or policy that required an Op Tech to speak with his or her manager before discharging a patient, Appellant had done so on several occasions prior to engaging in protected activity and was not disciplined for same. JA 93-94, at 160:16-161:4; JA 100-101, at 170:20-171:24; JA 181-184, at 17:6-20:9.

The pattern of antagonism of Appellant is further reflected by the fact that Appellant had a spotless disciplinary record for approximately two (2) years (including positive performance reviews), and was seemingly subjected to heightened scrutiny following the initiation of the prior lawsuit. In this regard, the

instant record bears a striking resemblance to the facts in *Brown*, 2013 WL 359731, where positive performance and protected activity followed by increased criticism was sufficient to establish causation.

Further, much like the defendant in *Brown*, Appellee contends that prior to the protected activity, Appellant was issued informal, verbal counseling for the same conduct that resulted in written discipline following her protected activity. JA 189, at 25:14-24; JA 211-212, at 61:13-62:3. However, this assertion is undercut by Appellee's employee handbook as well as Appellee's own testimony. Appellee's employee handbook contains a provision requiring the written documentation of any performance concerns. JA 251. Thus, Appellee's assertion that pre-protected activity verbal warnings were issued amounts to a self-serving statement that could easily be rejected by a reasonable factfinder.

Furthermore, Appellee's explanation for not issuing written discipline in the two year period immediately preceding the protected activity was an effort to avoid being perceived as a "mean manager." JA 189, at 25:14-24. Such a statement begs the question as to why Appellee's desire to avoid being perceived as "mean" suddenly changed after the protected activity. Certainly, a reasonable factfinder can conclude that the change in approach was a direct consequence of Appellant' protected activity; that is, it was retaliation for filing the prior lawsuit.

In short, similar to the plaintiff in *Robinson*, following her protected activity, Appellant was subjected to a "barrage of written . . . warnings . . . and disciplinary action[], all of which occurred soon after [she engaged in protected activity] and continued until [her] discharge." 982 F.2d 895. Such conduct was sufficient to support a finding in *Robinson*; so too should be the case here.

**(2) Appellant Can Establish Causation Based on the Temporal Proximity Between her Protected Activity and the Commencement of the Pattern of Discipline.**

Temporal proximity between protected activity and adverse action may be sufficient to establish a causal link. *Williams v. Phila. Housing Auth. Police Dept.*, 380 F.3d 751, 760 (3d Cir. 2004) (citing *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 183 (3d Cir. 2003)). However, "the timing of the alleged retaliatory action must be unusually suggestive" in order to establish causation. *Williams*, 318 F.3d at 760. "Where the temporal proximity is not so close as to be unusually suggestive . . . timing plus other evidence may be an appropriate test." *Id.* (citing *Thomas v. Town of Hammonton*, 351 F.3d 108, 114 (3d Cir. 2003)).

In granting Appellee's Motion for Summary Judgment, the District Court concluded that "[Appellant] does not argue the existence of unduly suggestive temporal proximity to establish a causal connection." JA 8. In so doing, the District focused its timing analysis solely on Appellant' suspension and termination (which were over two months and almost five months after her protected activity,

respectively). JA 8. As discussed in greater detail in section A, *infra*, the District Court committed reversible error in failing to acknowledge the full scope of the materially adverse action *herein* at issue. Appellant expressly asserted this position in her response to Appellee's Motion for Summary Judgment as well as during oral argument before the District Court. JA 319-321.

Applying the "timing plus other evidence" analysis to the instant record establishes a sufficient basis upon which a reasonable fact finder can conclude that Appellant can prove causation. At the time she engaged in protected activity, Appellant was in the midst of an almost two-year of no written discipline whatsoever and had received positive performance reviews. JA 189, at 24:23-25:3; JA 229-230, at 30:12-31:21; JA 264-273. Said performance reviews were signed by the same supervisor who, at or around the time Appellant initiated the prior lawsuit, ceased caring about the appearance of being "mean" and began issuing discipline for conduct that had previously been excused. *Id.*; JA 189, at 25:14-24. In addition, the pattern of discipline included two (2) instances of discipline for conduct that was not even a violation of Appellee's rules. JA 274-275; JA 83-84, at 150:13-151:15; JA 280-281; JA 94, at 161:1-4; JA 183, at 19:19-23. Thus, the timing of the pattern of discipline (which began shortly after Appellant' protected activity) and the "other evidence" (the questionable nature of various aspects of the discipline) is a sufficient basis for a finding of causation with respect to Appellant' *prima facie* case.

### (3) Appellant Can Establish Causation By Showing That Appellee's Explanation for the Adverse Action is Pretextual.

When a plaintiff has presented sufficient evidence to suggest that the defendant's explanation lacks credibility or that discrimination is more likely a motive, a case for pretext is made. *Texas Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248, 256 (1981). Determining whether a defendant's explanation for an adverse employment action is pretext often requires the same analysis involved in addressing the element of causation. *See Vanstory-Frazier v. CHHS Hosp. Co.*, LLC, 827 F. Supp. 2d 461, 474 (E.D. Pa. 2011) ("because the same evidence is relevant both in supporting the inference of causation required for plaintiff's prima facie case and in casting doubt on defendant's proffered reason for terminating plaintiff . . . I find it unnecessary to separately address whether plaintiff has established a prima facie case."). *See also Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280-86 (3d Cir. 2000) (asserting that a plaintiff can establish the required causal connection not just through temporal proximity or a pattern of antagonism but also through other circumstantial evidence, and recognizing that evidence supporting the prima facie case may often be helpful at the pretext stage). *Doe v. C.A.R.S. Protection Plus, Inc.*, 527 F.3d 358, 370 (3d Cir. 2008) ("[I]t is important to remember that the *prima facie*

case and pretext inquiries often overlap . . . and nothing about the *McDonnel Douglas* formula requires us to ration the evidence between one stage or the other.").

In light of the forgoing, Appellant *herein* addresses pretext both with respect to whether she has established a *prima facie* as well as whether she has set forth sufficient evidence from which a reasonable jury could disbelieve Appellee's proffered legitimate nondiscriminatory reason.

First, Appellant respectfully submits that the same record evidence discussed in sections B(1) and (2), *supra*, is a sufficient basis upon which a reasonable jury could conclude that Appellee's explanation is pretext for retaliation.

In addition, reviewing the instant record in its entirety supports that proposition that Appellee's basis for the adverse employment action lacks credibility. In essence, Appellee's position is that Appellant, who was not disciplined for approximately two (2) years, and was issued positive performance reviews suddenly became inept at her job such that she was issued discipline on an almost monthly basis following her protected activity.[2] As previously discusses, the

---

[2] *See e.g. Williams v. Mercy Health Sys.*, 866 F. Supp. 2d 490 (E.D. Pa. 2012)(denying summary judgment and explaining that the plaintiff's well documented past positive performance sufficiently casted doubt on the employer's performance-based termination rationale); *Ross v. Campbell Soup Co.*, 237 F.3d 701 (6th Cir. 2001)(reversing grant of summary judgment for the employer based in part on evidence that the plaintiff had received favorable performance evaluations); *Fisher v. Pharmacia & Upjohn*, 225 F.3d 915 (8th Cir. 2000)(reversing grant of summary judgment when there was sufficient evidence positive performance

legitimacy of the discipline issued following the prior lawsuit is a highly contested issue. In other words, it must be submitted to a jury. A reasonable jury certainly could disbelieve Appellee's basis for issuing the discipline at issue, thereby concluding that the adverse employment action was motivated by retaliation as opposed to a legitimate nondiscriminatory reason.

## CONCLUSION

For the foregoing reasons, Appellant, Kimberly Wells respectfully requests reversal of the District Court's decision.

Respectfully Submitted,

**KARPF, KARPF & CERUTTI, P.C.**

*/s Christine E. Burke*
Christine E. Burke, Esq.
3331 Street Road
Two Greenwood Sq., Suite 128
Bensalem, PA 19020
215.639.0801
PA Bar Nos.: 308166
Attorneys for Appellant

Date: October 18, 2016

corroboration of the plaintiff's abilities, including a statement by a customer of the employer and the plaintiff's prior performance evaluations, casting doubt on employer's rationale for termination).

**UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT**

| | | |
|---|---|---|
| KIMBERLY WELLS | : | CIVIL ACTION |
| | : | |
| Apellant, | : | No.: 16-2962 |
| | : | |
| v. | : | |
| | : | |
| RETINOVITREOUS ASSOCIATES, | : | |
| LTD. | : | |
| d/b/a MID ATLANTIC RETINA | : | |
| | : | |
| Appellee. | : | |

## CERTIFICATION

Christine E. Burke, counsel for Appellant, hereby certifies that she is a licensed attorney in good standing admitted to practice in Pennsylvania and New Jersey and more specifically in the Third Circuit Court of Appeals.

**KARPF, KARPF & CERUTTI, P.C.**

*/s Christine E. Burke*
Christine E. Burke, Esq.
3331 Street Road
Two Greenwood Sq., Suite 128
Bensalem, PA 19020
215.639.0801
PA Bar Nos.: 308166
Attorneys for Appellant

Date: October 18, 2016

**UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT**

| | |
|---|---|
| KIMBERLY WELLS<br><br>Appellant,<br><br>v.<br><br>RETINOVITREOUS ASSOCIATES, LTD.<br>d/b/a MID ATLANTIC RETINA<br><br>Appellee. | CIVIL ACTION<br><br>No.: 16-2962 |

## CERTIFICATION OF WORD COUNT

Christine E. Burke, counsel for Appellant, hereby certifies that the Legal Argument portion of the Appeal Brief submitted in this matter contains 6,535 words, exclusive of tables and certifications.

Respectfully Submitted,

**KARPF, KARPF & CERUTI, P.C.**
*/s/ Christine E. Burke*
Christine E. Burke, Esq.
3331 Street Road
Two Greenwood Sq., Suite 128
Bensalem, PA 19020
215.639.0801
PA Bar No.: 308166
Attorneys for Appellant

Date: October 18, 2016

**UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT**

| | | |
|---|---|---|
| KIMBERLY WELLS | : | CIVIL ACTION |
| | : | |
| Appellant, | : | No.: 16-2962 |
| | : | |
| v. | : | |
| | : | |
| RETINOVITREOUS ASSOCIATES, | : | |
| LTD. | : | |
| d/b/a MID ATLANTIC RETINA | : | |
| | : | |
| Appellee. | : | |
| | : | |

## CERTIFICATION

Christine E. Burke, counsel for Appellant, hereby certifies that Appellant's Brief in PDF Form is identical to the hard copy form filed with the Court.

Respectfully Submitted,

**KARPF, KARPF & CERUTI, P.C.**
*/s/ Christine E. Burke*
Christine E. Burke, Esq.
3331 Street Road
Two Greenwood Sq., Suite 128
Bensalem, PA 19020
215.639.0801
PA Bar No.: 308166
Attorneys for Appellant

Date: October 18, 2016

**UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT**

| | |
|---|---|
| KIMBERLY WELLS : | CIVIL ACTION |
| Appellant, : | No.: 16-2962 |
| v. : | |
| RETINOVITREOUS ASSOCIATES, LTD. d/b/a MID ATLANTIC RETINA : | |
| Appellee. : | |

## CERTIFICATION

Christine E. Burke, counsel for Appellant, hereby certifies that Appellant's Brief was subjected to a virus check on October 18, 2016 using Webroot software.

Respectfully Submitted,

**KARPF, KARPF & CERUTI, P.C.**
*/s/ Christine E. Burke*
Christine E. Burke, Esq.
3331 Street Road
Two Greenwood Sq., Suite 128
Bensalem, PA 19020
215.639.0801
PA Bar No.: 308166
Attorneys for Appellant

Date: October 18, 2016

**UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT**

| | |
|---|---|
| KIMBERLY WELLS<br><br>Appellant,<br><br>v.<br><br>RETINOVITREOUS ASSOCIATES, LTD.<br>d/b/a MID ATLANTIC RETINA<br><br>Appellee. | CIVIL ACTION<br><br>No.: 16-2962 |

**CERTIFICATE OF SERVICE**

Christine E. Burke, counsel for Appellant, hereby certifies that Appellant's Brief has been filed electronically in PDF format via ECF and that seven (7) hard copies of the Brief have been sent to the Clerk's Office and one hard copy has been sent to Appellees' counsel via U.S. Mail at the following addresses:

Clerk of Court
Third Circuit Court of Appeals
21400 U.S. Courthouse
601 Market Street
Philadelphia, PA 19106

Tracy A. Walsh, Esq.
Charles R. Starnes, Esq.
Weber, Gallagher, Simpson, Stapleton, Fires & Newby, LLP
2000 Market Street, Suite 1300
Philadelphia, PA 19103

Respectfully Submitted,

**KARPF, KARPF & CERUTI, P.C.**
*/s/ Christine E. Burke*
Christine E. Burke, Esq.
3331 Street Road
Two Greenwood Sq., Suite 128
Bensalem, PA 19020
215.639.0801
PA Bar No.: 308166
Attorneys for Appellant

Date: October 18, 2016